CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUL 13 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIAM C. PETTIS, | ) |
| Petitioner, | ) Civil Action No. 7:05-CV-00610 |
| v. | ) **MEMORANDUM OPINION** |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) By: Samuel G. Wilson<br>) United States District Judge |

This is a motion by William Pettis pursuant to 28 U.S.C. § 2255 challenging the validity of his plea of guilty to charges of conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 846 and possession of a firearm in furtherance of that offense in violation of 18 U.S.C. § 924(c)(1). Pettis, who entered the plea on the second day of trial, now claims that his plea was not voluntary but was coerced because his counsel was unprepared for trial. Having reviewed the expanded record before it,[1] the court finds that Pettis' counsel was prepared to proceed at trial, that Pettis knowingly and voluntarily entered his guilty plea, and that, pursuant to that plea, Pettis validly waived his right to collaterally attack. Accordingly, the court denies Pettis' § 2255 motion.

I.

A grand jury indicted Pettis and his co-defendants on charges of conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 846 and possession of a firearm in furtherance of that offense in violation of 18 U.S.C. §

---

[1] Pursuant to Rule 7 of the Rules Governing Section 2255 Proceedings, the court has received additional documents, exhibits, and affidavits. The expanded record is sufficient to inform the court's decision; therefore, the court finds that an evidentiary hearing is unnecessary under Rule 8 of the Rules Governing Section 2255 Proceedings.

924(c)(1). During the months leading up to trial, Pettis' counsel filed comprehensive Jencks Act, Giglio, Brady, and discovery motions, to which the court ordered the government to appropriately and fully respond, and counsel contacted Pettis' former attorney on related state charges seeking additional information and evidence. Counsel frequently wrote Pettis, updating him on the status of his case, relating the possible sentence for the charges against Pettis, relaying discovery material obtained from the government, and ultimately advising Pettis that, in light of the body of evidence against him, pleading guilty probably was in Pettis' best interests. However, when emphasizing the advisability of a plea, counsel consistently underscored that the ultimate decision of whether to plead guilty was Pettis' alone.

All the while, Pettis was writing to counsel, asking him to file various discovery motions and motions to suppress. Counsel responded by telling Pettis that he would not file groundless motions and that none of the motions Pettis was urging had a sufficient basis in law and fact. Pettis requested that counsel contact the National Legal Professional Associates (NLPA), a legal support group for attorneys representing indigent persons. Counsel contacted the NLPA, and, after reviewing discovery in the case, an NLPA attorney advised Pettis and his counsel "that there [was] a substantial amount of evidence the government [could] introduce against [Pettis] . . . which *most certainly* would result in his conviction and receiving a much longer sentence than he otherwise would receive if he pled guilty" (emphasis added).

Pettis also wrote to the court requesting appointment of new counsel because, according to Pettis, current counsel had failed to keep Pettis informed, had told Pettis there was no chance of an acquittal, and had refused to retain a private investigator. The court denied Pettis' motion, finding that counsel's degree of communication with Pettis would allow for an adequate defense

2

and that counsel had not improperly exercised his discretion on tactical matters, such as filing motions and hiring a private investigator. Still displeased with counsel's efforts, Pettis began filing discovery motions on his own, none of which the court granted. Just before trial, counsel met with Pettis to review additional discovery and again to discuss Pettis' plea options. In a letter immediately following that meeting, counsel indicated to Pettis that he was aware that Pettis had contacted the court to express his dissatisfaction and noted that, to his knowledge, Pettis had not pointed to any potential witness or evidence counsel had neglected.

Pettis proceeded to trial and, after jury selection, requested that the court appoint new counsel. Pettis admitted that he and counsel had met to discuss the evidence against him but insisted that he and counsel did not "see eye to eye" and claimed that counsel had "done nothing [Pettis had] asked him to do." Pettis cursorily attacked counsel's performance but did not specify any particular evidence or meritorious argument counsel had failed to consider and pursue. Pettis had asked counsel to contact several people who might generally assert that Pettis was not involved in the drug trade or who, according to Pettis, might impeach the government's witnesses; however, Pettis' requests were always vague, never suggesting that any witness had any specific, helpful, admissible evidence or information. Therefore, the court denied his motion and proceeded with the trial.

Over the course of the first day and a half of trial, the government called eight witnesses. Several of those witnesses testified that Pettis had sold them powder and crack cocaine; one witness testified that he had witnessed Pettis trade cocaine for a fully automatic firearm; another witness testified that Pettis and his co-defendants had brought crack into her home and had divided the crack into small packets; and two witnesses, both co-defendants who had already

3

pled guilty, testified that they had accompanied Pettis on trips to Washington, D.C. to purchase drugs. One of the co-defendants also testified that Pettis sometimes carried a gun when selling drugs and that Pettis had provided him with drugs to sell. Pettis' counsel cross-examined each of the government's witnesses and explored their biases and personal interests.

After the testimony of those eight witnesses, Pettis expressed a desire to abandon the trial and plead guilty, and he entered a written plea agreement with the government. As part of the plea agreement, the government agreed not to seek a mandatory consecutive thirty-year sentence under 18 U.S.C. § 924 (c)(1)(B) for Pettis' use of a fully automatic firearm in furtherance of drug trafficking, and Pettis' agreed to waive his right to collaterally attack his plea and sentence.[2] The court conducted a thorough plea colloquy, during which Pettis affirmed under oath, among other things, that he had received a copy of the indictment, that he had discussed the charges and his case with counsel, that he was fully satisfied with his counsel's representation, that his attorney had read the entire plea agreement to him before he signed, that he understood everything in the agreement, that no one had made any other or different promises or assurances to him to induce entry of the plea, that no one had forced him to enter the guilty plea, that he understood the maximum penalties for the offenses charged, that he was waiving his right to collaterally attack his sentence, that his plea was knowing and voluntary, and that he was pleading guilty because he in fact was guilty. Finding that Pettis was fully competent and capable of entering an informed plea and that Pettis' guilty plea was knowing and voluntary, the court accepted his plea.

---

[2]The indictment did not specifically charge Pettis with use of a fully automatic firearm; however, according to circuit precedent, the type of firearm used is a sentencing factor and not an element of the offense. See United States v. Harrison, 272 F.3d 220, 224-26 (4th Cir. 2001). Thus, the government was not required to specifically charge that the firearm was fully automatic. Id.

4

Less than a week after pleading guilty, Pettis wrote to the court seeking to withdraw his plea, claiming that counsel and Pettis' mother pressured him into pleading guilty when he was actually innocent. When counsel forwarded Pettis the presentence report, Pettis asked counsel to move to withdraw and for a continuance so that Pettis could retain new counsel. In a letter to Pettis, counsel agreed to move to withdraw and for a continuance but noted, "We went through a day and a half of overwhelming evidence on the part of the government and I prefer to believe that you had a lucid moment at that point where you deviated from the notion that the government was not going to carry its burden against you." The court found no reason to appoint new counsel but agreed to continue Pettis' sentencing for 30 days so that Pettis might retain new counsel. The court made clear that it would not grant trial counsel's motion to withdraw until Pettis properly substituted new counsel to proceed at sentencing.

When the day of the sentencing arrived, Pettis' newly retained counsel was not prepared to proceed, so the court informed Pettis' trial counsel that his motion to withdraw was denied and informed Pettis' newly retained counsel that she was free to participate in the sentencing but that the sentencing would proceed as scheduled. The court addressed Pettis' motion to withdraw his guilty plea, and, finding that Pettis' plea was knowing and voluntary, that Pettis had not credibly asserted his legal innocence, that Pettis had the close assistance of competent counsel, and that granting Pettis' motion would be a waste of judicial resources, the court denied Pettis' motion. The court then sentenced Pettis to consecutive sentences of 262 months for the drug conspiracy and 60 months for the use of a firearm in connection with that offense. Pettis appealed, but the Fourth Circuit affirmed his conviction and sentence. Pettis then filed this § 2255 motion, in which he devotes many pages to assailing his counsel's performance before and during trial on

various grounds, generally asserting among other things that his counsel could have met with him more often and could have interviewed more potential witnesses before trial.

## II.

A waiver of the right to collaterally attack a conviction or sentence is valid so long as it is voluntarily and knowingly made. U.S. v. Lemaster, 403 F.3d 216, 220-223 (4th Cir. 2005). Thus, so long as Pettis' plea agreement and the accompanying waiver of collateral attack were knowing and voluntary, Pettis may not raise his claims in a § 2255 petition. Pettis claims, though, that his plea agreement and waiver were not knowing and voluntary and that he entered them as a result of his attorney's failure to adequately prepare for trial. In order to prevail, Pettis must demonstrate a reasonable probability that, but for counsel's alleged lack of preparation, he would have foregone his plea and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). Pettis has not met that burden.

Pettis' voluminous motion challenges his counsel's performance from nearly every theoretical angle and from the tenor of Pettis' argument, Pettis would have the court conclude that his counsel essentially abandoned him, a conclusion their correspondence and the record belie. More fundamentally, however, Pettis never once points to an important specific piece of helpful evidence or a specific argument counsel should have but did not pursue. Though Pettis generally theorizes that counsel should have interviewed certain people, he never reveals what specific *useful* information counsel failed to unearth. In point of fact, counsel never abandoned Pettis, but instead impressed Pettis that despite preparation, tactics and strategy, he realistically was subject to 30 years for the use of a fully automatic firearm in connection with the drug conspiracy, as compared to five years for that offense if he pled guilty. Accordingly, the court

6

finds that, even had counsel pursued the various blind leads Pettis offered, the prognosis for Pettis' trial would not have changed. To borrow Pettis' counsel's words, Pettis would have been facing "overwhelming evidence on the part of the government" and in all likelihood still would have experienced the "lucid moment" during which he decided it was in his best interests to plead guilty.

Moreover, Pettis' claims of ineffective assistance and involuntariness contrast sharply with those Pettis made during his plea colloquy, when he affirmed that he completely understood the terms of the plea agreement, that he was entering the plea knowingly and voluntarily, and that he was completely satisfied with his attorney's representation. This court accepted Pettis' plea and, as such, is in a unique position to evaluate the voluntariness of that plea. The court conducted all the follow up necessary to assure itself that Pettis' plea was knowing and voluntary, and the court's findings were not mere formalisms. The court was and remains satisfied that Pettis' plea was a knowing and voluntary plea supported by an independent basis in fact and buttressed by Pettis' own affirmation that he was pleading guilty because he in fact was guilty. Therefore, the court finds Pettis' challenges to the voluntariness of his plea to be "palpably incredible and patently frivolous or false." Lemaster, 403 F.3d at 222-23. Accordingly, because Pettis waived his right to collaterally attack as part of a knowing and voluntary plea, the court dismisses his § 2255 petition.

### III.

For the reasons stated, the court grants the respondent's motion to dismiss.

**ENTER**: This 13th day of July, 2006.

_____
UNITED STATES DISTRICT JUDGE